## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

M.O.G.R.,                           :
                                    :
                Petitioner,         :
                                    :
v.                                  :    Case No. 4:25-cv-356-CDL-AGH
                                    :        28 U.S.C. § 2241
Warden, STEWART DETENTION           :
CENTER, *et. al*,                   :
                                    :
                Respondents.        :
_____

## <u>ORDER</u>

Petitioner, an alien subject to a final order of removal, is presently detained at the Stewart Detention Center awaiting her imminent deportation. She seeks to prevent her immediate removal because she is pregnant and has a child who is a citizen of the United States. This Court lacks jurisdiction to interfere with the execution of the final order of removal. And Petitioner has failed to demonstrate that her detention as a pregnant alien and mother of a United States citizen violates her constitutional rights. Accordingly, the temporary stay of her removal is lifted, and her application for habeas corpus relief (ECF No. 1), as amended (ECF No. 8), is denied.

## BACKGROUND

Petitioner is a native and citizen of Honduras who was observed crossing the Rio Grande river on a raft near Del Rio, Texas on July 3, 2018. Waters Decl. ¶ 3, ECF No. 9-1; Waters Ex. A, at 3, ECF No. 9-2. She was encountered shortly thereafter by

Customs and Border Protection ("CBP") and taken to the border patrol station for processing. Waters Ex. A, at 3. According to Petitioner, she was fifteen years old at the time, though CBP listed her age as seventeen. Am. Pet. ¶ 18, ECF No. 8; Waters Ex. A, at 1. On July 4, 2018, she was served with a notice to appear ("NTA"), charging her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an inadmissible alien. Waters Decl. ¶ 4; Water Ex. B, ECF No. 9-3. She was released from custody on July 5, 2018, on an Order of Release on Recognizance. Waters Decl. ¶ 5; Water Ex. C, ECF No. 9-4. On July 6, 2021, Petitioner filed an application for relief from removal. Waters Decl. ¶ 6; Waters Ex. D, ECF No. 9-5. On February 14, 2024, an immigration judge ("IJ") issued a removal order in absentia after Petitioner failed to appear at her removal hearing.[1] Waters Ex. G, ECF No. 9-8.

On September 18, 2025, Petitioner was arrested in Edgefield, South Carolina on charges of endangering emergency services personnel, driving without a license, and failure to maintain proof of insurance. Waters Decl. ¶ 11; Waters Ex. H, at 2, ECF No. 9-9; Water Ex. I, ECF No. 9-10. United States Immigration and Customs Enforcement ("ICE") took her into custody on September 20, 2025. Waters Decl. ¶ 13; Waters Ex. H, at 1. She arrived at Stewart Detention Center on September 22, 2025, and an initial pregnancy test was negative. Pet. Ex. D, at 6, ECF No. 1-6. However, on October 21, 2025, she had a positive urine test for pregnancy. *Id.* A progress note in her medical records indicated that Petitioner was less than eighteen weeks pregnant. *Id.* at 5.

---

[1] Petitioner's immigration attorney appeared for the hearing. Waters Decl. ¶ 10.

On October 17, 2025, Petitioner moved to reopen her immigration proceedings, but that order was denied on October 21, 2025. Waters Ex. J, ECF No. 9-11; Waters Ex. K, ECF No. 9-12. Petitioner filed her original application for habeas relief on November 5, 2025 (ECF No. 1). She filed an emergency motion for a TRO on November 7, 2025, seeking her immediate release from detention and stay of removal because of the risk to her health and pregnancy. Em. Mot. for TRO 1-2, ECF No. 5. On November 18, 2025, she filed an emergency motion to stay her removal (ECF No. 6), which the Court granted pending a ruling on her motion for TRO. Text-Only Order, Nov. 18, 2025, ECF No. 7. On November 19, 2025, she filed an appeal of the denial of her motion to reopen with the Board of Immigration Appeals ("BIA"), which remains pending. Pet'r's Reply Ex. A, ECF No. 11-1. On the same day, she filed her amended petition (ECF No. 8). Respondents responded in opposition to Petitioner's habeas application and motion for a temporary restraining order on November 20, 2025 (ECF No. 9). Petitioner filed a reply brief on November 25, 2025 (ECF No. 11). This case is ripe for review.

## DISCUSSION

### I.    Jurisdiction

Petitioner seeks to stay her removal and be released from detention during her appeal to the BIA of the IJ's denial of her motion to reopen. *See* Reply Supp. TRO 7 (complaining that "the government may continue to detain her indefinitely while the BIA considers her case—a process that is notoriously unpredictable and may take

months or years[.]")  Petitioner can seek such a stay with the immigration court and/or with the appropriate Court of Appeals, but this Court lacks jurisdiction to grant such a stay.

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 173-80 (1803)).  In the immigration context, sections 1252(a)(5), 1252(b)(9), and 1252(g) limit federal courts' jurisdiction.  Section 1252(a)(5) establishes that a petition for review to the court of appeals is the exclusive vehicle for judicial review of a final order of removal.  8 U.S.C. § 1252(a)(5).  Courts have held that this provision deprives them of jurisdiction to grant a motion to stay removal when an individual is contesting their removal order in a habeas case.  *See, e.g., Amaya v. U.S. Immigration & Customs Enf't*, 383 F. App'x 419, 420 (5th Cir. 2010) (holding that federal courts can only stay removal "pending consideration of a petition for review"); *Watson v. Stone*, No. 4:13-cv-480, 2013 WL 6072894, at *2 (M.D. Ga. Nov. 18, 2013) ("[Section 1252(a)(5)] has consistently been interpreted by district courts faced with a motion to stay removal as stripping them of jurisdiction to provide such relief."); *Ingram v. Holder*, No. 4:12-cv-0390, 2012 WL 1339919, at *2 (N.D. Ala. Apr. 13, 2012) (holding that under section 1252(a)(5), the court lacked jurisdiction to stay removal pending judicial review).  Section 1252(b)(9) reiterates Congress's jurisdiction-stripping intent.  That provision requires that

> [j]udicial review of all questions of law and fact, including interpretation
> and application of constitutional and statutory provisions, arising from

any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, . . . or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).  Courts have consistently read section 1252(b)(9) in conjunction with section 1252(a)(5) and concluded that district courts lack jurisdiction to review "*any* issue—whether legal or factual—arising from *any* removal-related activity." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see also Reno v. Anti-American Anti-Discrimination Comm.*, 525 U.S. 471, 482-483 (1999) (holding that 1252(b)(9) functions as a "'zipper' clause that says 'no judicial review in deportation cases unless this section provides judicial review'").  "In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings." *Aguilar v. U.S. Immigration & Customs Enf't*, 510 F.3d 1, 9 (1st Cir. 2007).

Finally, section 1252(g) specifically bars review of removal orders.  It states that

[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).  Courts have held that section 1252(g) also deprives district courts of jurisdiction to stay removal.  *Hamama v. Adducci*, 912 F.3d 869, 874 (6th Cir. 2018)

(holding that the district court correctly determined that it lacked jurisdiction to stay removal under section 1252(g)); *Idokogi v. Ashcroft*, 66 F. App'x 526, 526 (5th Cir. 2003) (same).

Petitioner argues that the statutory jurisdictional bars do not apply to her circumstances.  Notwithstanding her clear attempt to avoid removal, she maintains that she seeks judicial review of her *detention*, making a distinction between detention to facilitate imminent removal (which is not reviewable by the district court) and detention of a pregnant alien (which Petitioner maintains is reviewable). Reply Supp. TRO 1, ECF No. 11.  While she is not asking this Court to directly review her removal order to determine its enforceability, she does ask this Court to "[e]njoin ICE and DHS from removing [her] from the United States while her appeal remains pending and during the pendency of any appeal before the Board of Immigration Appeals."  Am. Pet. 9.  Similarly, in her emergency motion for a TRO, Petitioner asks this Court to stay her removal "pending the resolution of her habeas petition *and* Motion to Reopen."  Em. Mot. TRO 8 (emphasis added).

Through this habeas petition, Petitioner is attempting an end-around challenge to ICE's decision to execute her removal order.  That is exactly the type of action that is prohibited by the jurisdictional bars discussed above.  *See* 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders . . . ."); *see also Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007) (internal quotations and citations omitted) ("A petitioner may not create the

jurisdiction that Congress chose to remove simply by cloaking an . . . argument in constitutional garb."). This Court lacks jurisdiction to stay Petitioner's removal.[2]

## II.    Petitoner's Unconstitutional Detention Claims

Although district courts do not have jurisdiction to review final orders of removal, the district courts are authorized to consider claims that an alien's detention is otherwise unconstitutional.    Petitioner claims that her detention violates the Fifth Amendment because: (1) she is detained while pregnant and (2) she has a U.S. citizen child.[3]  Petitioner seeks to have this Court declare that detention of pregnant women by ICE violates the Fifth Amendment Due Process Clause.  Am. Pet. 9.  In support of this claim, Petitioner argues that her detention while pregnant violates an internal DHS policy—ICE Directive 11032.4.    Am. Pet. 9.    She also provides general information regarding the harm presented to pregnant women in detention or incarceration.  Am. Pet. 8.

Petitioner's claims relate to the conditions of her confinement.  *See* Am. Pet. 8-9; Reply Supp. TRO 4-6.  As this Court has previously held, the Court lacks jurisdiction to consider conditions of confinement claims in a habeas action and "[r]elease from detention is not available as a remedy for unconstitutional conditions of confinement claims." *A.S.M. v. Warden,* 467 F. Supp. 3d 13411348 (M.D. Ga. 2020).

---

[2] The other provisions Petitioner cites likewise fail to overcome the jurisdictional bar.  Petitioner references the All Writs Act, the Suspension Clause, and Administrative Procedures Act ("APA") in support of her argument that this Court retains jurisdiction over her habeas petition and to stay her underlying removal order.  Am. Pet. 2; Em. Mot. TRO 3; Reply Supp. TRO 3-4.  But section 1252 expressly provides that courts lack jurisdiction "notwithstanding any other provision of law (statutory or nonstatutory), including . . . sections 1361 and 1651" of Title 28.

[3] These claims directly address the legality of her detention and are not barred by § 1252.

Thus, Petitioner's conditions of confinement claims are not cognizable in habeas and are subject to dismissal.

Petitoner's reliance upon Respondents' alleged non-compliance with one of their own directives does not rescue Petitioner's habeas claim. Petitioner maintains that ICE disregarded ICE Directive 11032.4 when it took Petitioner into custody and when ICE subsequently refused to release Petitioner. Am. Pet. 7-8. ICE Directive 11032.4 "sets forth policy and procedures to ensure individuals known to be pregnant, postpartum, or nursing in [ICE] custody are effectively identified, monitored, tracked, and housed in an appropriate facility to manage their care." Pet. Ex. A at 1, ECF No. 1-3. Directive 11032.4 states that "[g]enerally, ICE should not detain, arrest, or take into custody for an administrative violation of the immigration laws individuals known to be pregnant, postpartum, or nursing unless release is prohibited by law or exceptional circumstances exist." *Id.* Further, the Field Office Director ("FOD") for ICE should "ensure, unless release is prohibited by law or exceptional circumstances exists, individuals known to be pregnant, postpartum, or nursing are generally not detained or, if already detained, are generally released from detention." *Id.* at 6-7. The FOD should consult with multiple inter-agency organizations, including ICE's legal department, to determine whether a pregnant individual should be detained. *Id.* Finally, the Directive contains limiting language which states that it "provides only internal ICE policy guidance . . . and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter." *Id.* at 9

8

Petitioner maintains that ICE failed to identify her as pregnant and continues to fail to comply with the directive.  Preliminarily, the Court observes that the present record does not support a finding that ICE violated this Directive.  Petitioner attached medical records to her habeas petition.  Those records confirm that Petitioner had a negative pregnancy test at intake, despite stating she was pregnant at the time.  Pet. Ex. D at 6; *see also* Waters Decl. ¶ 12.[4]  Thus, the record shows that ICE did not violate Directive 11032.4 by taking Petitioner into custody because ICE did not know Petitioner was pregnant.  Additionally, insufficient evidence exists in the present record to support a finding that ICE subsequently violated Directive 11032.4 by detaining her pending her removal.  The Directive does not prohibit detention of pregnant aliens.  Instead, the Directive provides for certain considerations when determining whether to keep a pregnant individual in custody.[5]  The Court is unconvinced that the present record supports a finding that the Directive has been violated to the extent that it rises to the level of a constitutional violation.  The records show that Petitioner is registered as pregnant with the facility, that she received

---

[4] Deportation Officer Waters declares that Petitioner reported to ICE that she was pregnant while at the Edgefield County Detention Center.  Waters Decl. ¶ 12.  Staff at that detention center then gave petitioner a pregnancy test, which came back negative.  *Id.*  Petitioner was then transferred into ICE custody.  Upon arrival at a secondary detention facility, Petitioner was given another pregnancy test which also came back negative.  *Id.*

[5] Petitioner provides only the following evidence to establish that the Directive has been violated: On or about October 28, 2025, Deportation Officer Frank Scolnick informed undersigned counsel that ICE was not releasing pregnant women under any circumstances.  Am. Pet. ¶ 21.  But this statement alone is insufficient to show that Petitioner's constitutional rights have been violated.  First, and importantly, a deportation officer lacks authority under the Directive to make custody decisions for pregnant individuals.  *See* Pet. Ex. A at 1-2 (explaining that detention decisions for pregnant individuals must be made by the FOD or a designee not below the Assistant Field Office Director level).  Second, this uncorroborated statement, alone, is insufficient to show that Petitioner is being held in violation of the Directive.

special accommodations for her pregnancy (such as a bottom bed and extra pillow), that she is receiving prenatal vitamins, that she was given instructions on nutritional guidelines, and that she was scheduled to visit an OBGYN. Pet. Ex. D at 6. Thus, Petitioner's claims based on ICE Directive 11032.4 are unsupported by the record.

Petitioner next claims that her detention violates the "Constitution's protection of family unity." Am. Pet. ¶ 26. But the Circuit courts that have addressed this issue in the context of immigration detention have found no substantive due process right to family unity. *See, e.g., Reyna ex rel. of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019) ("On the merits, we, like the district court, have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."); *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 21-23 (1st Cir. 2007) ("Any interference with the right to family integrity alleged here was incidental to the government's legitimate interest in effectuating detentions pending the removal of persons illegally in the country.") Moreover, the Court does not find that the behavior of the government here "shocks the conscience." The government took into custody an individual subject to a final removal order. The fact that that individual is a parent is incidental to her lawful detention for the purpose of removal. Thus, there is no due process violation. As the First Circuit explained, "[t]o rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process claim." *Aguilar*, 510 F.3d at 22.

Lastly, Petitioner makes the curious argument that her constitutional rights are being violated because of an indefinite delay in her removal, which delay has not

been substantial and has resulted from Petitioner's own legal strategy. Because Petitioner has a final order of removal, Petitioner's detention is governed by 8 U.S.C. § 1231(a). Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days. 8 U.S.C. § 1231(a)(1)(A). This removal period begins to run on, as relevant here, "the date the order of removal becomes administratively final," or "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(i), (iii). Detention during the ninety-day removal period is mandatory. 8 U.S.C. § 1231(a)(2). The removal period shall be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). Finally, inadmissible aliens, criminal aliens, and those who pose a risk to the community or of non-compliance with a removal order "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]." 8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) does not limit the length of post-final order detention. In *Zadvydas*, however, the United States Supreme Court applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute." 533 U.S. at 689. The Supreme Court held that § 1231(a)(6) authorizes post-removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States. *Id.* at 699-700. The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such

removal. *Id.* at 701. The Eleventh Circuit subsequently explained that in order "[t]o state a claim under *Zadvydas* . . . an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under Zadvydas the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.")).

Petitioner generally claims that her detention violates due process because "it is not reasonably related to any legitimate governmental purpose." *Id.* In *Zadvydas*, the Supreme Court applied the constitutional avoidance principle to § 1231(a)(6) to prevent "indefinite detention of an alien" which "would raise a serious constitutional problem[]" under the Fifth Amendment Due Process Clause. *Zadvydas*, 533 U.S. at 690. The Court explained that to determine whether detention is constitutionally sound, the question a habeas court must answer is whether detention is "reasonably necessary to secure removal." *Id.* at 699-700. This is because the "basic purpose" of the statute is to effectuate an individual's removal. *Id.* at 697. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Petitioner has been detained for a little over 60 days. While this is not an insignificant period, it is well below the six-month presumptively reasonable period

approved by the Supreme Court in *Zadvydas*. Further, Petitioner's detention supports a significant government purpose—her removal. In fact, Petitioner would likely have been removed from the country by now and no longer in detention had she not sought an emergency stay in this Court. Based on the present record, Petitioner's detention is not unconstitutional under *Zadvydas*.

## CONCLUSION

In summary, the Court lacks jurisdiction to stay Petitioner's removal, and Petitioner's detention is otherwise not unconstitutional. The temporary stay issued in this case is thus lifted, and Petitioner's application for habeas relief is denied.

**IT IS SO ORDERED**, this 2nd day of December, 2025.

S/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA